IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> HANNA REALTY LLC d/b/a HERBIE'S HIDEAWAY AT CORNHUSKER LANES and JACOB HANNA, <br><br> Defendants. | 7:19-CV-5008 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court for a determination of damages following the Court's entry of default judgment against defendants Jacob Hanna and Hanna Realty LLC d/b/a Herbie's Hideaway at Cornhusker Lanes. Filing 21.

I.     BACKGROUND

As set forth in the Court's Memorandum and Order granting default judgment, Filing 21, plaintiff Joe Hand owns exclusive commercial distribution rights to certain UFC broadcasts, including, as relevant here, *Ultimate Fighting Championship® 220: Miocic vs. Ngannou* on January 20, 2018; *Ultimate Fighting Championship® 221: Romero vs. Rockhold* on February 10, 2018; *Ultimate Fighting Championship® 222: Cyborg vs. Kunitskaya* on March 3, 2018; *Ultimate Fighting Championship® 223: Khabib vs. Iaquinta* on April 7, 2018; and *Ultimate Fighting Championship® 224: Nunes vs. Pennington* on May 12, 2018. Filing 1 at 1.

Hanna Realty conducts business as Herbie's Hideaway. Filing 1 at 2. Jacob, Nicholas, and Tammy Hanna were all officers, directors, shareholders, members, or principles of Hanna Realty, all had the right and ability to supervise Hanna Realty's activities, and all had obvious and direct financial interests in the activities of Hanna Realty. Filing 1 at 2. On the dates of each of the

1

aforementioned UFC broadcasts, Hanna Realty exhibited the programs to patrons at Herbie's Hideaway. Filing 1 at 4. Hanna Realty did not have authorization, a license, or permission from Joe Hand to exhibit the programs. Filing 1 at 4. Instead, Hanna Realty unlawfully published the broadcasts by unauthorized satellite transmission. Filing 1 at 4. Hanna Realty displayed the programs willfully and with the purpose and intent to secure a commercial advantage. Filing 1 at 4.

On June 19, 2019, Joe Hand filed suit against Hanna Realty and the three Hanna defendants, alleging they had willfully violated 47 U.S.C. § 605 prohibiting the piracy of satellite communications and seeking damages in the amount of $27,829.68. Filing 20-7 at 3. Joe Hand served Jacob Hanna and Hanna Realty with summonses on November 13, 2019. Filing 9-1. Joe Hand served Nicholas and Tammy Hanna on December 4, 2019. Filing 13.

On January 14, 2020, Nicholas Hanna and Tammy Hanna filed a Suggestion in Bankruptcy. Filing 16. In response to the Suggestion in Bankruptcy, the Court stayed proceedings as to Nicholas and Tammy Hanna only. Filing 17. Hanna Realty and Jacob Hanna failed to plead or otherwise defend the action, and the clerk entered default judgment against them on February 6, 2020. Filing 19.

Joe Hand then moved for default judgment against Hanna Realty and Jacob Hanna pursuant to Fed. R. Civ. P. 55(b). Filing 20. The Court entered default judgment against Jacob Hanna and Hanna Realty but stayed its determination of damages because Joe Hand alleged the non-defaulted defendants were liable to the same extent as the defaulted defendants. Filing 21 at 6. The Court ordered Joe Hand to provide notice when it believed the damages determination could move forwarded upon the resolution or dismissal of claims against the non-defaulted defendants. Filing 21 at 6. Joe Hand subsequently dismissed the non-defaulted defendants from the lawsuit and

notified the Court of the same. Filing 22; Filing 23; Filing 24. Thus, the Court can now proceed with its calculation and award of damages against the defaulted defendants, Jacob Hanna and Hanna Realty.

In support of its damages request, Joe Hand has submitted several exhibits, including an affidavit from Joe Hand's president; Joe Hand's commercial licensing agreement; UFC rate card; an affidavit from a patron present at Herbie's Hideaway for the May 12, 2018, UFC program; Facebook posts from Cornhusker Lanes advertising the aforementioned UFC programs; and Cornhusker Lanes' liquor license. Filing 20-2; Filing 20-3; Filing 20-4; Filing 20-5; Filing 20-7; Filing 20-8.

## II. DISCUSSION

### A. Scope of Review

It is "appropriate for a district court to enter a default judgment when a party fails to appropriately respond in a timely manner." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (citing *Inman v. Am. Home Furniture Placement, Inc.*, 120 F.3d 117, 119 (8th Cir. 1997)). "Upon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as true . . . ." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Therefore, "it is incumbent upon the district court to ensure that 'the unchallenged facts constitute a legitimate cause of action' prior to entering final judgment." *Marshall*, 616 F.3d at 852-53 (quoting *Murray*, 595 F.3d at 871).

### B. Damages

Under 47 U.S.C. § 605, an aggrieved party can recover either actual damages or it may seek to recover statutory damages of not less than $1,000 nor more than $10,000 per violation

relating to piracy of satellite communications. *See* 47 U.S.C. § 605(e)(3)(C)(i). Furthermore, if "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the court has discretion to order so-called "enhanced damages" by increasing the damages award "by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii). Lastly, the statute mandates "the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Joe Hand seeks damages in the amount of $25,775 plus attorney's fees of $1,525 and costs of $529.68, for a total of $27,829.68. Filing 20-1 at 15.

Whether an evidentiary hearing is necessary to determine damages is entrusted to the Court's discretion. *See Stephenson v. El-Batrawi*, 524 F.3d 907, 916 (8th Cir. 2008) ("The need for a hearing is within the sound discretion of the district court . . . ."); *see also* Fed. R. Civ. P. 55(b)(2)(B) (stating the Court "*may* conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages" (emphasis supplied)). Plaintiff's Complaint, together with the exhibits submitted with Plaintiff's Motion for Default Judgment, obviates the need for an evidentiary hearing. *See Taylor v. City of Ballwin*, 859 F.2d 1330, 1333 (8th Cir. 1988) ("As the findings and judgment regarding damages in the instant [defaulted judgment] case are capable of being computed on the basis of facts of record . . . the district court need not hold an evidentiary hearing on the issue of damages." (Internal quotation marks omitted)).

   1.   *Statutory Damages*

Joe Hand has elected statutory damages for a single violation. Filing 11-1 at 5. The Court is permitted to determine the appropriate amount of statutory damages "as [it] considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). According to Joe Hand, the sublicensing fee for Defendants to have properly exhibited each program would have been $1,155 per event. Filing 20-2 at 2; Filing 20-4

4

at 1. Defendants did not charge a cover fee for patrons on the night of May 12, 2018, when they displayed the *UFC 224: Nunes v. Pennington* program. Filing 20-5 at 1. Plaintiff also adduced evidence that Defendants displayed the UFC programs on January 20, February 10, March 3, and April 7, 2018. Filing 20-7. Under these circumstances, the Court finds that statutory damages in the amount of $1,155 per program, or $5,775 total, are fair and reasonable. *See, e.g.*, Rodriguez, 2018 WL 5924389, at *2 (finding the proper amount of statutory damages was "[t]he cost of the broadcast" for a venue of defendant's size); Palomares, 2018 WL 5045190, at *3 (finding appropriate amount of statutory damages to be the cost of sublicensing plus the amount paid in cover charges by patrons); Moore, 2017 WL 741009, at *2 (determining that "the amount [the defendant] should have paid for a sublicensing agreement is the proper amount of statutory damages").

    2.    *Enhanced Damages*

Joe Hand also seeks enhanced statutory damages pursuant to § 605(e)(3)(C)(ii). It seeks $4,000 in enhanced damages for each of the five programs, for a total of $20,000. Filing 20-1 at 11. Enhanced damages are appropriate "in the event the 'violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain.'" Rodriguez, 2018 WL 5924389, at *2 (quoting 47 U.S.C. § 605(e)(3)(C)(ii)). "The purpose of these enhanced damages is to punish violations and simultaneously deter future piracy." Palomares, 2018 WL 5045190, at *4 (quoting Moore, 2017 WL 741009, at *3). "In determining the appropriate amount to be awarded, courts typically consider whether there have been repeated violations over an extended period of time, whether the defendant advertised the event or charged a cover charge, the amount of the defendant's gain, and other similar factors." *Id.* (internal quotation marks omitted).

Joe Hand submitted evidence that Defendants advertised each event by posting on Facebook that it would be airing the program and offering food and drink specials. Filing 20-7 at 1-7. With respect to the *Nunes v. Pennington* broadcast, Joe Hand demonstrated Defendants showed the program on six televisions at Herbie's Hideaway at Cornhusker Lanes. Filing 20-5 at 1; *cf. Rodriguez,* 2018 WL 5924389, at *1, *3 (awarding no enhanced damages where the pirated program was shown on a single small television in a restaurant and defendants had not advertised the event). The bar had a capacity of 100 to 120 people and there were approximately 13 people there on May 12, 2018. Filing 20-5 at 2. Joe Hand did not submit evidence showing whether there was a cover charge, how the program was displayed, or how many people were in attendance for the other four broadcasts. Joe Hand also presented evidence that Defendants could not have unintentionally intercepted the signal but rather, would have had to use an illegal unencryption device or purchase a residential pay-per-view subscription which prohibits commercial exhibition. Filing 20-2 at 4.

The Court agrees this evidence demonstrates Defendants' violation of § 605 was willful and for the purpose of financial gain and showed a pattern of violations over time. However, Joe Hand has not submitted evidence of the amount by which Defendants might have benefited from the unlawful displays of the UFC programs, nor did it submit specific evidence relating to four of the five broadcasts. Accordingly, the Court concludes that enhanced damages in the total amount of $8,000 are sufficient to punish the violations and deter future misconduct. *Compare Palomares,* 2018 WL 5045190, at *4 (finding "an award of enhanced damages in the amount of $1,980—one half the amount of statutory damages" was appropriate where there was no history of prior violations, defendants charged a cover but did not advertise the event, and the restaurant was at less than 50% capacity), *with Joe Hand Promotions, Inc. v. Leprechaun League*, No. 8:17-CV-64,

at *5 (D. Neb. Aug. 18, 2017) (finding an award of $7,500 in enhanced damages was warranted where the defendant displayed the program on five televisions and one projection screen, the bar had a capacity of 125 patrons with 93 in attendance, and there was no cover charge).

### C. Costs and Attorney Fees

Finally, Joe Hand seeks costs and attorney fees. Under § 605, the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Through counsel's declaration, Joe Hand has properly demonstrated that it incurred costs in the amount of $529.68 in order to file and effectuate service and which it is entitled to recover. [Filing 20-6 at 2](). Joe Hand has also demonstrated its counsel expended 6.1 hours at an hourly rate of $250 for a total of $1,525 in attorney fees which it is entitled to recover. [Filing 20-6 at 2]().

### III. CONCLUSION

IT IS ORDERED:

1. Plaintiff, Joe Hand Promotions, Inc., is awarded damages in the amount of $13,775;

2. Plaintiff, Joe Hand Promotions, Inc., is awarded Plaintiff, Joe Hand Promotions, Inc., is awarded costs in the additional amount of $529.68;

3. Plaintiff, Joe Hand Promotions, Inc., is awarded attorney fees in the additional amount of $1,525;

4. Defendants Jacob Hanna and Hanna Realty LLC d/b/a Herbie's Hideaway at Cornhusker Lanes are jointly and severally liable for the damages awarded to Plaintiff;

5. A separate judgment will be entered.

Dated this 13th day of April, 2020.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge